IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES MCCOLLUM, § | | |
| Dallas Cnty. Jail Bookin No. 20017567, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | No. 3:21-cv-900-G-BN |
| § | | |
| DALLAS COUNTY JAIL SYSTEMS, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff James McCollum, a pretrial detainee at the Dallas County jail, facing state charges of arson, *see State v. McCollum*, Nos. F2036584, F2036585 (265th Jud. Dist. Ct., Dallas Cnty., Tex.), filed this *pro se* civil rights action raising claims related to his conditions of confinement, his bond, and the alleged deprivation of his property. *See* Dkt. No. 3.

Senior United States District Judge A. Joe Fish referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted McCollum leave to proceed *in forma pauperis* (IFP) under the Prison Litigation Reform Act (the PLRA). *See* Dkt. No. 4.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss McCollum's complaint without prejudice to his realleging just his procedural due process claim against a jural entity or individual defendant through an amended complaint filed by a deadline to be set

by the Court.

## Legal Standards

Under the PLRA, where a prisoner – whether he is incarcerated or detained pending trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

The fails-to-state-a-claim language of this statute (as well as its sister statute, Section 1915(e)(2)(B)) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has

"suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted).

These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett*, 2018 WL 6069969, at *2 (citations omitted).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11. Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is

implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that

the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

In sum, "*[p]ro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient....'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

And, "[o]rdinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)).

But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,'" *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott,* 589 F. App'x 279, 279 (5th Cir. 2015)

(per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

**Analysis**

McCollum makes four claims, which fall into three categories. He challenges the constitutionality of his conditions of confinement based on (1) two overflowing toilets and (2) the temporary removal of shower curtains. He further challenges his not receiving a reduction in bond. And he challenges the jail's taking of his property.

The undersigned first observes, however, that McCollum has brought this lawsuit against the jail itself. But he has not alleged that the Dallas County jail is a jural entity – an entity that has a separate and distinct legal existence and thus may be sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313; *see, e.g.*, *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (applying *Darby* to find that the Dallas County jail is a non-jural entity under Section 1983).

But, even if the Court assumes that McCollum has brought claims against a jural entity, neither the first nor the second claim that he has alleged – the conditions-based and the bailed-related challenges – amount to plausible constitutional violation

for the reasons explained below.

I. Conditions of Confinement

First, "since pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The basic human needs of pretrial detainees are "protected by the Due Process Clause of the Fourteenth Amendment," *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)), which affords them "protections [that are] 'at least as great as ... those available to a convicted prisoner,'" *Price v. Valdez*, No. 3:16-cv-3237-D, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting Hare, 74 F.3d at 644-45); *accord Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). And the Fifth Circuit "has explained that challenges to inadequate food, heating, sanitary conditions, or mail or television privileges are generally considered challenges to the conditions of confinement." *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)).

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because, ... intent may be inferred from the decision to expose a detainee to an unconstitutional condition. A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."

*Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2, then quoting *Hare*, 74 F.3d at 645).

"Proving a pattern is a heavy burden, one that has rarely been met in our caselaw," and, "to constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Here, McCollum alleges that twice toilets were flooded by an inmate in a neighboring cell, causing damage to his property; that the temporary removal (for a period of three days) of shower curtains amounts to negligence and poor jail standards and deprives inmates of privacy; and that, in general, his stay at the jail has not been pleasant. *See* Dkt. No. 3 at 4, 8, 10, 14, 16, 18; *see, e.g.*, *id.* at 16 ("Flies get on my food and drinking water cup and mice have miturated [sic] on my books that lie on the cell's floor…. I've even encountered many weeks-long prolongments of any necessary emergency maintenance repair requests finally being performed. Throughout my stay here during the Pandemic, I have seen so much neglect for the routine operations of jail provided amenities and basic service needs for inmates.").

But, under the applicable standards, none of these assertions – particularly

the unspecified complaints of negligence – plausibly alleges an unconstitutional condition of pretrial confinement. *Compare Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *10 (N.D. Ill. June 5, 2013) ("Courts have held that unsanitary conditions of confinement stemming from broken plumbing[ – particularly over *an extended period of time* – ]may rise to the level of an Eighth Amendment violation." (collecting cases)), *with Crouchman v. Pickens Cnty. Council*, Civ. A. No. 9:16-0804-CMC-BM, 2017 WL 767185, at *12 (D.S.C. Feb. 3, 2017) ("Plaintiff's allegation in his Complaint that sometimes his toilet or sink would be broken 'for days' and that on occasion he had to be 'let out to use the common area bathroom because his toilet don't work' does not establish a constitutional violation." (citations omitted)), *rec. adopted*, 2017 WL 749393 (D.S.C. Feb. 27, 2017).

II.     <u>Excessive Bail</u>

McCollum next asserts that he has been unable to obtain information from the jail concerning his inability to make bond. *See* Dkt. No. 3 at 10 ("This jail's Magistrate promised I'd have a bond reduction hearing within a couple days following [my arrest]. This has yet to happen and I've submitted several kites requesting to speak to a jail official or anybody about bond information or its adjustments based on my indigence and for me to view or discuss the Public Release Bond requirements listed on a bulletin board near the book-in area."); *id.* at 25 (response to related grievance explaining that McCollum "will need to contact your attorney concerning your legal matters").

> The Eighth Amendment, which prohibits "excessive bail," recognizes both the obvious liberty interest of pretrial detainees (those accused, but

not yet convicted) and the government's legitimate interest in ensuring the accused's appearance at trial. U.S. CONST. amend. VIII. It does so by ensuring that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Stack v. Boyle*, 342 U.S. 1, 5 (1951). Accordingly, the amount of bail cannot be "excessive" – that is, "higher than ... reasonably calculated to" ensure the accused's appearance. *Id.* (citation omitted).

*Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 3714455, at *2 (S.D. Tex. Aug. 7, 2019), *rec. adopted as modified*, 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019); *see also Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983) ("The Eighth Amendment's prohibition against excessive bail is the foundation of a bail system which, by conditioning release on the offer of financial security, seeks to reconcile the defendant's interest in, and society's commitment to, pretrial liberty with the need to assure the defendant's presence at trial." (internal quotation marks and citation omitted)).

> [A] prohibition against excessive bail exists even though there is no absolute constitutional right to bail. In *Stack v. Boyle*, the [United States Supreme] Court held that "bail set at a figure higher than an amount reasonably calculated to ensure the defendant's presence at trial is 'excessive' under the Eighth Amendment." In applying this standard, [the Fifth Circuit has] found that requiring $750,000 bail from a defendant deemed to be a flight risk is not excessive even though the defendant is unable to pay the bail.

*Broussard v. Par. of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (quoting *Stack*, 342 U.S. at 5, then citing *United States v. McConnell*, 842 F.2d 105, 107-08 (5th Cir. 1988)).

Assuming that the prohibition against excessive bail applies to the states through the Fourteenth Amendment, *see Baker v. McCollan*, 443 U.S. 137, 144 n.3

(1979); *Broussard*, 318 F.3d at 650 n.25,[1] McCollum fails to specify the amount of bail imposed, or – even if the Court takes judicial notice as to those amounts – "facts concerning the circumstances that might have warranted [the] amount of bail," *Been v. Edwards*, No. CIV-15-1258-F, 2015 WL 9263911, at *4 (W.D. Okla. Dec. 3, 2015).

He has therefore failed to show "that he was subjected to an unreasonable or arbitrary bail, and he has not alleged a plausible claim" under Section 1983. *Id.* (dismissing a similarly deficient claim under Sections 1915A(b) and 1915(e)(2)(B)); *see also Jones v. Harris Cnty.*, Civ. A. No. H-19-0628, 2019 WL 2355732 (S.D. Tex. May 31, 2019) ("Plaintiff contends that these denials of felony pretrial bonds violated his constitutional rights under the Eighth Amendment. … Plaintiff's argument is misplaced. The Excessive Bail Clause of the Eighth Amendment provides that '[e]xcessive bail shall not be required.' U.S. CONST., amend. VIII. But the Eighth Amendment 'says nothing about whether bail shall be available at all.' *United States v. Salerno*, 481 U.S. 739, 752 (1987). Consequently, plaintiff's allegation that the state district judges denied him felony pretrial bonds does not, standing alone, establish an actionable Eighth Amendment violation for purposes of section 1983. *See Carlson v. Landon*, 342 U.S. 524, 545-46 (1952) ('[The Excessive Bail Clause] has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail.')." (citation omitted)).

---

[1] *See also Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015) ("The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc))).

III. <u>Procedural Due Process</u>

McCollum finally challenges the taking of his personal property by an employee at the jail (Flores): "In short, the jail changed and enforced a policy of allowing the inmates to keep small cut-out news articles which I had retained to use for legal defense arguments pertaining to my criminal charges. The jail should have given written notice of the change so inmates could have properly disposed of these items." Dkt. No. 3 at 12, 14; *see also id.* at 12 ("The jail's revoking of a previously promised privilege without issuing inmates appropriate written notice resulting in the theft loss of my personal property by at least one jail official, whose name is Flores.").

Liberally construed, McCollum appears to claim that the jail's alleged taking of his property without written notice violated his right to procedural due process. *Cf. Meals v. Hale Cnty. Sheriff's Office*, No. 5:10-cv-45-BG, 2011 WL 13137098, at *1 (N.D. Tex. Aug. 18, 2011) ("All of a person's constitutional rights are not checked at the jailhouse door. Both arrestees and pretrial detainees retain due process rights under the Fourteenth Amendment. 'The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest.'" (citations omiteed)).

And, if McCollum had alleged that Flores or another jail employee arbitrarily took his property without notice, this claim as made under Section 1983 would appear to be barred.

"The *Parratt/Hudson* doctrine dictates that a state actor's random and

unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc) (discussing, in turn, *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517 (1984))); *see, e.g.*, *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (per curiam) ("[T]he conduct alleged describes the state actors' unforeseeable failure to abide by procedure – the defendants' arbitrary, unreasonable abuse of power. Such allegations call for the application of the *Parratt/Hudson* doctrine, so the defendants' 'conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post deprivation remedy.'" (quoting *Zinermon v. Burch*, 494 U.S. 113, 115 (1990))).

"[T]his doctrine is most frequently applied when prisoners (or others) are deprived of their personal property but have the opportunity to seek return of their property (or be made whole) through a post-deprivation process." *LeBeouf v. Manning*, 575 F. App'x 374, 379 (5th Cir. 2014) (per curiam) (citations omitted). "In Texas, the tort of conversion generally constitutes an adequate post-deprivation remedy." *Wyatt v. Matagorda Cnty.*, No. 3:13-CV-356, 2017 WL 908202, at *4 (S.D. Tex. Mar. 7, 2017) (citing *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994)). And "[t]he burden is on the plaintiff to show that the State's post-deprivation remedy is not adequate." *Id.* (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

But "[c]onduct is not 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon*, 494 U.S. at 138, and reversing dismissal of Section 1983 claim for wrongful confiscation of property under the *Parratt/Hudson* doctrine "[b]ecause the undisputed facts reveal that Allen's word processor and radio were confiscated under the authority of a prison administrative directive, the confiscation was not a random, unauthorized act by a state employee").

So, insofar as McCollum has alleged that his property was wrongfully taken from him pursuant to a policy made without proper notice, the Court should allow him leave to file an amended complaint against an jural entity or individual defendant (or defendants) related to this alleged due process violation.

## Recommendation

The Court should dismiss Plaintiff James McCollum's complaint without prejudice to his realleging just his procedural due process claim against a jural entity or individual defendant through an amended complaint filed by a deadline to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 4, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE